UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 14-44095-PJS |
| ) | |
| ASSOCIATED COMMUNITY ) | Chapter 11 |
| SERVICES, INC., ) | |
|     Debtor. ) | Hon. Phillip J. Shefferly |
| _____) | |
| ) | Adv. Proc. No. _____ |
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ASSOCIATED COMMUNITY ) | |
| SERVICES, INC., ) | |
| ) | |
|     Defendant. ) | |
| _____) | |

**ADVERSARY COMPLAINT FOR
REVOCATION OF ORDER OF CONFIRMATON AND DISCHARGE**

Plaintiff United States of America, pursuant to the provisions of 26 U.S.C. § 7401, with the authorization of the Secretary of the Treasury and at the direction of the Attorney General of the United States, brings this adversary complaint against the Defendant, Associated Community Services, Inc., to revoke the order of confirmation and to revoke the discharge of the Defendant pursuant to 11 U.S.C. § 1144 which, Plaintiff contends, was procured by fraud, and in support thereof makes the following allegations:

**Parties, Jurisdiction, and Venue**

1.     The Plaintiff United States of America is a creditor of Associated Community Services, Inc.

2. On March 13, 2014, Associated Community Services, Inc., as Debtor and Debtor In Possession, filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtor and Debtor In Possession (the "Debtor") filed a disclosure statement and plan, and the plan was confirmed and the Debtor received a discharge of debts by order of this Court.

3. Associated Community Services, Inc., is the Defendant and Debtor, and within the jurisdiction of this Court.

4. This action arises under 11 U.S.C. § 1144. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334.

5. This adversary proceeding constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (J) and (L).

6. To the extent it applies and pursuant to the requirements of L.R. 9021-1, the United States consents to entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

7. Debtor operated as a Debtor-in-Possession, with no requests having been made for the appointment of a trustee or examiner, and no official committee appointed by the United States Trustee.

**Factual Allegations**

8. The *Order Confirming Debtor's Combined Disclosure Statement and Plan of Reorganization*, should be revoked pursuant to 11 U.S.C. § 1144 because the Confirmation Order was procured by fraud, within the meaning of 11 U.S.C. § 1144, on the part of the Debtor, its principals and its counsel Copilevitz & Canter, LLC.

9. The Debtor willfully failed to disclose its knowledge of a pending enforcement action against four of its major clients, in which it had been alleged that each these entities, for whom the Debtor was the primary solicitor, were sham charities, seeking to enjoin each of those entities, and seeking to recover over $190 million on behalf of defrauded donors.

10. As detailed herein, the Debtor, the Debtor's officers, Richard T. Cole and Robert William Burland, Jr., and the Debtor's "special charity law counsel," the law firm of Copilevitz & Canter, LLC, knew of this pending enforcement action and willfully failed to disclose it.

11. On May 18, 2015, the Federal Trade Commission ("FTC"), all fifty States and the District of Columbia, joined in the filing of a civil enforcement action against four alleged "sham charities" and their officers, in the United States District Court for the District of Arizona, seeking both injunctive relief and to recover $187 million on behalf of defrauded donors. *See Federal Trade Commission; all Fifty States, and the District of Columbia v. Cancer Fund of America, Inc., a Delaware Corporation, et al.*, No. 15-cv-00884-PHX-NVW (hereinafter the "FTC Complaint" or the "FTC Action").

12. The alleged "sham charities" named in the FTC Complaint were Cancer Fund of America, Inc., Cancer Support Services, Inc., Children's Cancer Fund of America, Inc., and The Breast Cancer Society, Inc. (hereinafter the "Sham Charities").

13. Prior to the filing of the FTC Complaint on May 18, 2015, the Debtor had extensive business relationships with each of the "Sham Charities" listed in the FTC Complaint.

14. In Schedule G of its Bankruptcy Schedules the Debtor lists executory contracts with Cancer Fund of America, Inc., Children's Cancer Fund of America, Inc., and The Breast Cancer Society, Inc., "for marketing, fund raising." *See Doc. No. 33, Schedule G, p.24-27.*

15. Upon information and belief, the Debtor had previously been the primary fund raiser for Cancer Fund of America, Inc., Children's Cancer Fund of America, Inc., and The Breast Cancer Society, Inc.

16. Upon information and belief, the Debtor solicited at least eighty percent of the $187 million at issue in the FTC Action which the FTC and the fifty states are seeking to recover on behalf of defrauded donors.

17. Upon information and belief, based upon Debtor's fund raising records, the "Sham Charities" listed in the FTC Complaint generated a substantial portion of Debtor's revenue.

18. Upon information and belief, the fifty states' and the FTC's investigation of the "Sham Charities" identified in the FTC Complaint began as early as 2010, which had included the issuance of a document request directly to the Debtor.

19. Over the course of the FTC's investigation of the "Sham Charities" identified in the FTC Complaint, the debtor was represented by the law firm of Copilevitz & Canter, LLC ("Copilevitz").

20. Upon information and belief, Debtor also knew of the pending FTC Action into Cancer Support Services, Inc., one of the "Sham Charities" identified in the FTC Complaint, because Cancer Support Services, Inc., is a related entity and/or nominee or alter ego of the Debtor.

21. Upon information and belief, Debtor also knew of the pending FTC Action into the "Sham Charities" identified in the FTC Complaint through its principals.

22. Upon information and belief, Debtor also knew of the pending FTC Action into the "Sham Charities" identified in the FTC Complaint as a result of Debtor's management of Cancer Support Services, Inc.

23. For the foregoing reasons, Debtor knew of the pending FTC Action into the "Sham Charities" identified in the FTC Complaint prior to the filing of its Chapter 11 Petition on March 13, 2014.

24. On August 4, 2014, the FTC sent Karen Donnelly of Copilevitz, a letter "RE: Cancer Support Services, Inc., Children's Cancer Fund of America, Inc., the Breast Cancer Society, Inc., James Reynolds, Sr., Kyle Effler, Rose Perkins, James Reynold II…", to which it attached a draft of its proposed complaint against the same "Sham Charities" against which it subsequently filed the FTC Complaint (hereinafter "Draft FTC Complaint").

25. Upon information and belief, as of August 4, 2014, Debtor, through its counsel, Copilevitz, received the Draft FTC Complaint.

26. On May 5, 2014, the Debtor filed an Application to Employ the law firm of Copilevitz & Canter, LLC, as Special Charity Law Counsel, in which the Debtor represented that: "Prior to the Petition Date, the Debtor engaged the Applicant to represent it in connection with ongoing registration, compliance, and regulatory notices and related litigation, including without limitation the following ongoing lawsuits involving allegations of breach of contract (collectively, the "Administrative Matters"). *See Application to Employ the law firm of Copilevitz & Canter, LLC, as Special Charity Law Counsel, at ¶9, Docket No. 59*.

27. On May 7, 2014, the Court entered the Order Granting Debtor's Application to Employ the Law Firm of Copilevitz & Canter, LLC, as Special Charity Law Counsel. *See Order*

*Granting Debtor's Application to Employ the law firm of Copilevitz & Canter, LLC, Docket No. 62.*

28. On October 10, 2014, Debtor filed a *Combined Plan of Reorganization and Disclosure Statement. See Doc. 133* (referred to as the "Disclosure Statement").

29. Debtor willfully failed to disclose in its Disclosure Statement the pending FTC Action into the "Sham Charities" identified in the FTC Complaint. If the Sham Charities are not exempt organizations or valid entities, the Disclosure Statement fails to disclose all potential assets and creditors, and there may be substantial tax consequences to the Debtor.

30. On November 6, 2014, Copilevitz filed a First Interim Fee Application as Special Charity Law Counsel to Debtor for Services Rendered from March 13, 2013 to September 30, 2014, in the amount of $38,145.50, which listed, *inter alia*, 24.6 hours for Karen Donnelly. *Docket No. 165*.

31. The First Interim Fee Application of Copilevitz & Canter, LLC, dated November 6, 2014, Copilevetz describes the fees charged as to "[a]ssist the Debtor in connection with ongoing registration, compliance, and regulatory notices and related litigation."

32. The First Interim Fee Application of Copilevitz & Canter, LLC, dated November 6, 2014, contains no disclosure of the pending FTC Action or Debtor counsel's receipt of the Draft FTC Complaint on August 4, 2014.

33. On March 26, 2015, the Debtor filed a *Modification to Debtor's Combined Plan of Reorganization and Disclosure Statement. See Doc. No. 244* (referred to as the "Modified Disclosure Statement").

34. The Modified Disclosure Statement dated November 6, 2014, contains no disclosure of the pending FTC Action or Debtor counsel's receipt of the Draft FTC Complaint on August 4, 2014.

35. Debtor willfully failed to disclose in its Modified Disclosure Statement the pending FTC Action into the "Sham Charities" identified in the FTC Complaint.

36. On June 25, 2015, Copilevitz & Canter, LLC, filed a Second and Final Fee Application as Special Charity Law Counsel for Services Rendered from October 1, 2014 to May 8, 2015. *See Second and Final Fee Application, Doc. No. 275*.

37. The Second and Final Fee Application dated June 25, 2015, described the "Administrative Matters" as including "inquiries and requests for information from various governmental agencies in numerous states including Washington, Idaho, New York, Tennessee, Michigan, Connecticut, Mississippi, Texas, Alabama, Arkansas, Missouri, New Jersey, Minnesota, Illinois, Florida, Ohio, South Carolina, California and also Canada." *See Doc. No. 275*.

38. The Second and Final Fee Application of Copilevitz & Canter, LLC, dated June 25, 2014, contains no disclosure of the FTC Action filed on May 18, 2015, or Debtor's counsel's receipt of the Draft FTC Complaint on August 4, 2014.

39. These disclosure statements filed by the Debtor did not contain adequate information and were knowingly or recklessly and materially false. The Plaintiff United States and other entities relied upon the disclosure statements to their detriment.

## Count I

REVOCATION OF CONFIRMATION ORDER AND DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 1144

40. Paragraphs 1 through 39 of this complaint are incorporated into this paragraph by reference in their entirety.

41. Debtor wilfully failed to disclose its knowledge of the pending FTC Action. Had the Debtor disclosed its knowledge of the pending FTC Action, and made a full, candid and complete disclosure of the potential impact of the pending FTC Action upon the Debtor and the Debtor's proposed plan of reorganization, Debtor would not have satisfied the requirement of 11 U.S.C. §§ 1129(a)(1), (a)(2), (a)(3) and (a)(5).

42. Copilevitz received a draft copy of the complaint to be filed in the FTC Action, prior to the date of filing of the Disclosure Statement in Debtor's Chapter 11 proceedings. Copilevitz also knew that the FTC and fifty states planned to permanently enjoin the Sham Charities and seek monetary damages, thus offering the Debtor no hope of a continued revenue stream from the Sham Charities. Copilevitz did not disclose the existence of the FTC Action in its fee applications, which could easily be foreseen to have a substantial impact on Debtor's ability to reorganize.

43. The pending FTC investigation and related state inquiries continued to progress against the Sham Charities and Debtor's major clients prior to and through the petition date, and through the filing and confirmation of the Disclosure Statements, and yet these enforcement actions have not been disclosed to this Court or the Creditors, nor has Debtor's disclosures been supplemented in any way.

*11 U.S.C. §§ 524(e) and 1129(a)(1)*

44. Debtor's Combined Plan of Reorganization and Disclosure Statement included provisions that purported to release various claims by creditors, comprised of different classes, as allowed by the court. However, with the potential that there are many thousands of potential creditors of the Debtor who donated to the Sham Charities, and the donations can be tracked as payments to the Debtor by the Sham Charities, the fate of these potential creditors' claims are unknown and their existence is not disclosed.

45. Furthermore, the amount of the aggregate claims in this potential class of creditors is unknowable at this juncture, but the existence of this class was known and was not defined in the Disclosure Statement.

46. Because all releases, pursuant to 11 U.S.C. §§ 524(e) and 1129(a)(1), are alleged by the Debtor to be the product of consent validly given by each of the respective parties to such releases, based on the full disclosure required, such consent appears to have been lacking.

47. Plaintiff contends that the Debtor and its principals were under an affirmative legal duty and were otherwise obliged to disclose the connections and business dealings with the Sham Charities and the full nature of the ties between entities, and was also obliged to disclose the existence of the FTC Action and the impact of the Sham Charities dissolution on Debtor's future business.

48. Such information was material to the Court's consideration of whether the consent of the creditors to the plan was valid in the first place. Neither Debtor, its principals, nor Copilevitz disclosed this information to the Court in a timely manner, and their actions prevented any other party representing the Debtor from disclosing these material facts as well.

49. Plaintiff contends that the creditors would have voted differently had this material information been disclosed, and that the Court never would have approved of the Combined Plan of Reorganization had the Debtor made full, candid and complete disclosures regarding the existence of the FTC Action, and the relationship of the Debtor to the Sham Charities.

50. Debtor and its principals, as well as Copilevitz, had personal knowledge of the existence of material information, and were under the affirmative duty to disclose that information, and affirmatively chose not to disclose the material information relating to the FTC Action. This omission or misrepresentation was calculated to influence the Court's consideration and determination of the plan's merits under 11 U.S.C. §§ 524(e) and 1129(a)(1) had it been timely disclosed.

51. Debtor, its principals and Copilevitz, by their omissions and misrepresentations made in the papers filed with the Court that failed to disclose this potential liability, were made to induce the Court into reliance on the disclosures that were proffered, and that the Court, by relying on the Disclosure Statement, entered the confirmation order. At the very minimum, the long-standing nature of the relationship between Debtor's principals and the principals and named individual defendants of the Sham Charities, means these omissions were made with a reckless disregard for the truth.

52. The information was material, since Debtor has expressly assumed executory contracts with Sham Charities or charities under investigation in other states, and this information cuts against the viability of the Debtor's business model and ultimate ability to perform under the plan, and therefor was material information.

*11 U.S.C. § 1129(a)(2) and Debtor's Materially Defective Disclosure Statement*

53. By failing to make full, candid and complete disclosure of Debtor's knowledge of and connections to the FTC Action, and by not disclosing the full nature of Debtor's dealings and relationship with the Sham Charities, Debtor's Disclosure Statement was materially defective.

54. Richard Cole signed the Disclosure Statement. *Doc. No. 133*.

55. As an officer of the Court, Richard Cole was under an affirmative duty to disclose his connections to and dealings with the Sham Charities, as well as his knowledge of the FTC Action. Copilevitz, who signed papers filed with this Court, similarly also failed to disclose the true nature of its involvement in the FTC Action, and Copilevitz knew, or should have known, that the Debtor was not being fully candid with the Court in the bankruptcy case, and yet failed to correct the record. Such information from Copilevitz, Richard Cole and the Debtor were material to creditors, potential creditors, other parties in interest, and the Court.

56. At a minimum, holders of future claims need to be made aware of these connections as part of Debtor's duty to provide adequate information under 11 U.S.C. § 1125(a) in order for such claim holders to make an informed judgment regarding whether to vote for or against the plan,

57. Debtor, Richard Cole and Copilevitz made these material misrepresentations by omission with actual fraudulent intent because Debtor and Richard Cole had knowledge of their connections to, and dealing with the Sham Charities. Debtor and Richard Cole were under an affirmative legal duty to disclose such connections, their' knowledge of the FTC Action, and both failed to do so.

58. Therefore, had the Court had the benefit of this information at the time of the confirmation hearing on April 24, 2015, Plaintiff respectfully submits that Debtor would not have been able to carry its burden establishing that Debtor, as plan proponent, satisfied the requirements of 11 U.S.C. § 1129(a)(2)

*11 U.S.C. §§ 1129(a)(3) and 1129(a)(5)*

59. Debtor and its principals failure to disclose their knowledge of the FTC Action and connections to or relationship with the Sham Charities also constitutes a material misrepresentation by omission in connection with Debtor's burden of establishing that Debtor's plan was proposed in good faith as required by 11 U.S.C. § 1129 (a)(3), and the continued service of principals in their capacity as principals of a Debtor-in-Possession satisfied the requirements of 11 U.S.C. § 1129(a)(5)(A)(ii).

60. Given that Debtor and its Principals knew of the FTC Action, and were deeply connected with the Sham Charities beyond a contracting relationship, and failed to disclose this information, Plaintiff contends that the Court would not have been able to make a finding of good faith under 11 U.S.C. § 1129(a)(3) had Debtor and its principals made full, candid and complete disclosure.

61. Similarly, Debtor would not have been able to carry its burden of establishing that the continued service of its principals would have satisfied the requirements of 11 U.S.C. § 1129(a)(5)(A)(ii).

62. Debtor and its principals acted with fraudulent intent because they knew of the FTC Action and Debtor's connections with the Sham Charities, and knew of Debtor's management of Cancer Support Services, Inc., and which there was an affirmative duty to disclose such connections and knowledge and Debtor and its principals failed to do so.

63. The Court entered the Confirmation Order and found that Debtor's plan satisfied the requirements of 11 U.S.C. § 1129(a) due to the material affirmative misrepresentations and material misrepresentations by omission on the part of Debtor and its principals.

64. But for these misrepresentations, Debtor's plan would not have been confirmed.

65. Therefore, Plaintiff United States respectfully requests entry of an order and judgment revoking the confirmation order, pursuant to 11 U.S.C. § 1144 and revoking Debtor's discharge pursuant to 11 U.S.C. § 1144(2).

**WHEREFORE**, the plaintiff United States of America respectfully request that the Court enter an order and judgment (1) revoking the Confirmation Order, *Doc. No. 258* pursuant to 11 U.S.C. § 1144, (2) revoking Debtor's Discharge pursuant to 11 U.S.C. § 1144(2), and (3) for such other relief as the that the Court deems to be justified under the circumstances.

Dated: October 20, 2015

>Respectfully submitted,
>
>UNITED STATES OF AMERICA
>(Internal Revenue Service)
>Creditor
>
>*/s/ John A. Lindquist*
>JOHN A. LINDQUIST
>SENIOR LITIGATION COUNSEL
>OFFICE OF CIVIL LITIGATION
>Trial Attorney, Tax Division
>U.S. Department of Justice
>P.O. Box 403, Ben Franklin Station
>Washington, D.C. 20044
>Telephone: (202) 307-6561
>Facsimile: (202) 307-2504
>E-mail: John.A.Lindquist@USDOJ.GOV
>JEFFREY N. NUNEZ
>Trial Attorney, Tax Division
>United States Department of Justice
>P.O. Box 55, Ben Franklin Station
>Washington, D.C. 20044-0055
>Telephone: (202) 616-5218
>Facsimile: (202) 514-5238
>Email: Jeffrey.N.Nunez@usdoj.gov

## CERTIFICATE OF SERVICE

  I, Jeffrey N. Nunez, hereby certify that on October 20, 2015, I electronically filed the foregoing Adversary Complaint via this Court's ECF system, to counsel for the debtor, the U.S. Trustee, and all other parties requesting notice through this Court's ECF system. The United States submits that, under the circumstances, no other or further notice is required.

                */s/ Jeffrey N. Nunez*
                JEFFREY N. NUNEZ
                Trial Attorney, Tax Division
                U.S. Department of Justice